UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMMIE L. YERKS,

             Plaintiff,

v.                                       Case No. 24-cv-713-pp

ELIZABETH TEGELS, *et al.*,

             Defendants.

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Jammie L. Yerks, who is incarcerated at Jackson Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. The plaintiff has paid the full filing fee. This decision screens his complaint, dkt. no. 1.

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

2

B.     The Plaintiff's Allegations

The plaintiff has sued Elizabeth Tegels, Warden of Jackson Correctional Institution; Dr. Galliwalla; Dr. Liu; Nurse Tiffany Morrell; Nurse T. Hentz; Physical Therapist (PT) Darin Krzyzanowski; Nurse A. Luebchow; Nurse N. Trevino; Dr. Nicolas Castillo; Dr. LaVoie; Nurse M. McFarlane; Nurse Teresa Kling; Dr. Laura Sukowaty; and Health Services Unit Administrator (HSU) Tammy Maasen. Dkt. No. 1 at ¶¶49-63.

The plaintiff alleges that on September 18, 2014, he was injured in an incident at Dodge Correctional Institution. Id. at ¶1. Since the incident, the plaintiff allegedly has had range of motion issues and chronic pain in his shoulders. Id. at ¶2. He states that from 2016 until he transferred to Jackson, he was prescribed Tramadol, a pain medication, for ongoing use. Id.

The plaintiff alleges that he transferred to Jackson in April 2022, about four months after left shoulder surgery. Id. at ¶4. Dr. Galliwalla allegedly ordered that the plaintiff be taken off Tramadol "and no other real pain medication was prescribed due in part to the fact that the Plaintiff is allergic to Naproxen a[n] anti-inflammatory medication which helps with pain." Id. at ¶3. The plaintiff says that he sent requests to health services staff about his excruciating pain, but that his requests were ignored. Id. at ¶¶5-6. He states that after numerous requests, Dr. Liu saw him for an unrelated medical request, at which time he told the doctor about his shoulder pain. Id. at ¶7. Dr. Liu allegedly denied the plaintiff's verbal request for pain medication for his shoulder, but he did give the plaintiff Aspercreme, a topical medication. Id. at

3

¶¶8-9. The plaintiff says that Dr. Liu denied him any other pain medication. Id. at ¶10.

The plaintiff states that on May 13, 2022, he had an appointment with HSU staff and notified them of the extent of his pain in his shoulders, right hand and wrist. Id. at ¶12. Nurse Morrell allegedly assessed him. Id.

The plaintiff alleges that on October 11, 2022, he was taken to Black River Memorial Hospital for an EMG, where he learned that he had carpal tunnel in his right hand and wrist. Id. at ¶11. He says that on December 5, 2022, he returned to Black River Memorial Hospital where he was given a steroid injection and prescribed oral pain medication for his chronic pain. Id. at ¶¶14-15. When the plaintiff returned to Jackson, medical staff allegedly ignored the doctor's orders for oral pain medication. Id. at ¶16.

The plaintiff alleges that on March 1, 2023, he sent an HSU request asking about a solution for his chronic pain. Id. at ¶18. Nurse Hentz allegedly responded to the request and recommended topical cream. Id. The plaintiff states that another appointment with a nurse was to be scheduled. Id.

The plaintiff alleges that on March 28, 2023, he sent an HSU request to PT Krzyzanowski regarding the plaintiff's decrease in range of motion in his left shoulder and his grip weakening due to the carpal tunnel in his hand and wrist. Id. at ¶19. Nurse Luebchow allegedly responded to the request by advising that the plaintiff had been discharged from physical therapy on December 29, 2022. Id. Three days later, the plaintiff allegedly sent an HSU request for treatment for his chronic pain and loss of arm function, including

4

possible shoulder surgery. Id. at ¶20. Nurse Luebchow allegedly acknowledged the request without comment or recommendation. Id.

The plaintiff states that on April 7, 2023, he sent an HSU request for a status update on a treatment plan to deal with his chronic pain. Id. at ¶21. Nurse Hentz allegedly responded that the plaintiff was "referred to see the doctor based on the nursing on March 7, 2023 shoulder pain also regarding your EMG result from right arm numbness & tingling appt. is pending." Id.

The plaintiff alleges that on April 17, 2023, he sent an HSU request to make staff aware that he had "3 separate referrals placed in to see the provider for his chronic pain." Id. at ¶22. He says that he had not received any pain medication to deal with his constant pain. Id. Nurse Luebchow allegedly acknowledged the request "with no comment, but recommendations for HSU and ACP." Id.

On May 9, 2023, the plaintiff allegedly sent an HSU request stating that all that had been done at that point had not helped with his chronic pain. Id. at ¶23. The plaintiff states that he "made it clear that the TENS unit, Lidocaine, Steroid Injections, Muscle Rub and physical therapy did little to stop the constant pain he was suffering." Id. Nurse Luebchow allegedly responded that the plaintiff was referred to see the provider but that he still did not have an actual appointment date. Id.

The plaintiff alleges that on May 18, 2023, he sent an HSU request describing his excruciating shoulder pain. Id. at ¶24. He says that Nurse Trevino responded that he had a sick call appointment set for May 24, 2023.

5

Id. The plaintiff states that on May 24, 2023, he had a Tele-Med appointment with Dr. Tannan (not a defendant) during which he informed Tannan of his pain and need for pain medication and other treatment. Id. at ¶25.

The plaintiff alleges that on May 27, 2023, he sent an HSU request describing swelling and excruciating pain. Id. at ¶26. Nurse Hentz allegedly responded and informed the plaintiff that he was referred to the physical therapist and nursing concerning his shoulder. Id. On May 31, 2023, the plaintiff allegedly sent an HSU request to PT Krzyzanowski for a time frame for PT to ease the pain he felt in his shoulders and right hand and wrist. Id. at ¶27. Krzyzanowski allegedly responded that it would be a couple of weeks before he would be able to get the plaintiff in for treatment. Id.

The plaintiff alleges that on June 5, 2023, he sent an HSU request concerning why he had not been prescribed pain medication and to inform HSU staff that the Diclofenac Topical Gel was ineffective in handling his chronic pain. Id. at ¶28. Nurse Hentz allegedly responded by recommending a nursing sick call. Id.

The plaintiff alleges that on June 11, 2023, he sent an HSU request regarding an update from his June 7, 2023 sick call. Id. at ¶29. The plaintiff says that he alerted staff about his chronic pain and his request that an email be sent to Dr. Tannan concerning pain medication. Id. Nurse Luebchow allegedly responded to the request, "awaiting provider response." Id.

The plaintiff alleges that on June 26, 2023, he sent an HSU request to the physical therapist concerning his pain and PT referral from May 24, 2023.

Id. at ¶30. PT Krzyzanowski allegedly responded that the plaintiff was "8 weeks out now but may be able to move you." Id.

On June 18, 2023, the plaintiff allegedly sent an HSU request regarding the June 16, 2023 HSU request and asserting his excruciating pain, need for pain medication and willingness to participate in physical therapy. Id. at ¶31. Nurse Hentz allegedly responded to the request. Id.

The plaintiff alleges that on June 23, 2023, he sent an HSU request regarding the email mentioned in the June 11, 2023 HSU request and his need for pain medication due to his chronic pain. Id. at ¶32. Nurse Luebchow's response allegedly implied that the plaintiff had a consult with "Ortho" with no exact date specified. Id. That same day, the plaintiff allegedly requested via HSU a file review of medical records. Id. at ¶33.

On July 14, 2023, the plaintiff saw PT Krzyzanowski "where a treatment plan was created and additional comments made concerning the Plaintiff's pain and range of motion." Id. at ¶34. Krzyzanowski allegedly increased the amount of visits necessary for treatment from two to six visits and he planned "treatments of electric modalities, pain management, patient education, therapeutic activities and therapeutic exercises." Id. The plaintiff also states that Krzyanowski noted that the plaintiff could not tolerate physical therapy well and that he was aware of an upcoming orthopedic appointment. Id.

The plaintiff alleges that on July 18, 2023, he had an appointment with Dr. Leiah Neary of La Crosse Orthopedics, who said that surgery was not an option but that the surgeon had recommended "physical medicine rehab." Id.

7

at ¶35. The plaintiff states it was recommended that he continue therapy and pain management through his primary care source. Id. He says that he was given steroid injections in both shoulders. Id.

On July 31, 2023, the plaintiff allegedly saw PT Krzyzanowski for physical therapy and the plaintiff told Kryzanowski that the steroid injections did little with his chronic pain. Id. at ¶36. The plaintiff states that Krzyzanowski noted the plaintiff continued to have limited range of motion and strength in his shoulders and that he continued to request oral pain medication to deal with pain management. Id.

The plaintiff alleges that on September 6, 2023, he had another off-site appointment for pain management for his shoulders, during which a Dr. Zhovtis recommended that he start Tramadol, Gabapentin and physical therapy. Id. at ¶37. The plaintiff states that all Zhovtis's recommendations for pain medication have been ignored. Id.

On September 12, 2023, the plaintiff allegedly saw PT Krzyzanowski for physical therapy. Id. at ¶38. In his notes, Krzyzanowski allegedly said that physical therapy remained guarded because of increased pain, and he also noted that significant pain in dysfunction of the shoulders remained. Id.

The plaintiff alleges that on September 18, 2023, defendant Dr. Nicolas Castillo recommended that the plaintiff receive Tramadol for pain management, but that Dr. LaVoie denied the request. Id. at ¶39. In his notes, Castillo allegedly said that the plaintiff's suffering was affecting his quality of life. Id. Three days later, the plaintiff allegedly sent an HSU request to get information

8

concerning the doctor's request for Tramadol. Id. at ¶40. The plaintiff states that Nurse McFarlane responded by informing the plaintiff that it would take some time to get the approval from the committee. Id.

The plaintiff alleges that on September 26, 2023, he sent an HSU request to be seen by Dr. Castillo for his ongoing shoulder pain and mentioned that it was his second request. Id. at ¶41. Nurse Kling allegedly referred the plaintiff to "HSR and ACP" and noted that he was scheduled to see the provider and pain clinic. Id. Two days later, the plaintiff allegedly sent a request asking for a response from the HSU to his request to see Castillo about his chronic shoulder pain, for pain medication, and asking about the fact that the doctors' recommendations from Black River Memorial Hospital for certain oral pain medications had been ignored. Id. at ¶42. The plaintiff states that Luebchow's response to the HSU request shows that she was aware of his healthcare needs. Id.

The plaintiff alleges that on October 6, 2023, he sent an HSU request regarding his constant pain and the resubmission of pain medications prescribed by doctors at Black River Memorial Hospital. Id. at ¶43. According to the plaintiff, Luebchow's response to the HSU request shows that she was aware of his healthcare needs. Id.

On October 12, 2023, the plaintiff allegedly sent an HSU request about the status of the oral pain medication approval sent by Dr. Castillo on September 19, 2023. Id. at ¶44. He says that Luebchow responded by stating, "Tramadol has not been approved. This request has been sent to the provider."

9

Case 2:24-cv-00713-PP   Filed 07/20/25   Page 9 of 16   Document 5

Id. Shortly after Luebchow's response, Luebchow allegedly called the plaintiff to the HSU for an appointment, during which Luebchow told him, "We don't care what off-site doctors prescribe." Id. at ¶45. The plaintiff says that this shows that staff ignored the off-site doctors' medication recommendations. Id.

The plaintiff alleges that the next day, he saw PT Krzyzanowski for physical therapy, during which Krzyzanowksi noted that the plaintiff's condition was unresponsive to the treatment and that "HEP treatment" may work well over a period of time. Id. at ¶46. Krzyzanowski allegedly then discharged the plaintiff from physical therapy. Id.

The plaintiff alleges that on October 17, 2023, he sent an HSU request asking for the physical therapist notes and documentation concerning pain treatment. Id. at ¶47. Nurse Kling allegedly scheduled an HSU Appointment and appointments to see an RN/LPN. Id.

The plaintiff says that two days later, Dr. Laura Sukowaty allegedly denied an authorization for Tramadol pain medication requested by Dr. Castillo on October 16, 2023. Id. at ¶48.

The plaintiff states that on April 19, 2024, he submitted an administrative complaint in which he made staff aware "of the excruciating pain that he is in and the lack of a prescription oral pain medication, specifically Tramadol which was prescribed to him by the off-site provider JCI HSU staff referred him to." Id.

The plaintiff claims that the defendants showed deliberate indifference to his serious medical needs when they failed to provide medication or other relief

10

for the chronic and consistent pain he feels. Id. at ¶67. He also claims that the defendants ignored his chronic pain and that if they had acted differently, he would have suffered less pain. Id. at ¶68. The plaintiff seeks monetary damages and injunctive relief. Id. at ¶¶71-72.

    C.    <u>Analysis</u>

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. <u>Cesal v. Moats</u>, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." <u>Cesal</u>, 851 F.3d at 721 (quoting <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Id.</u> (quoting <u>King v. Kramer</u>, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. <u>Id.</u> (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 836-38 (1994); <u>Greeno v. Daley</u>, 414 F.3d 645, 653 (7th Cir. 2005)). A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an

11

incarcerated individual's pain. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (citing Estelle, 429 U.S. at 104-05).

The plaintiff alleges that the defendants refused to prescribe him the Tramadol pain medication that he previously had been prescribed at Dodge Correctional Institution and that had effectively managed his pain. He says that doctors at off-site medical visits recommended that he receive pain medication, but that the defendants refused to follow their recommendations. The plaintiff alleges that the medical care the defendants provided for his chronic pain was ineffective and that they ignored his complaints that he suffered excruciating pain from his medical issues. The plaintiff may proceed on Eighth Amendment claims against the following defendants: Dr. Galliwalla and Dr. Liu, for allegedly refusing to prescribe the plaintiff Tramadol or other pain medication when he arrived at Jackson; Dr. LaVoie and Dr. Sukowaty, for allegedly refusing to prescribe the plaintiff Tramadol after Dr. Castillo and offsite doctors recommended it for the plaintiff; and Nurses Hentz and Luebchow, for allegedly ignoring the plaintiff's pain and refusing to recommend oral pain medication.

The plaintiff has not stated a claim against the remaining defendants. The complaint does not include any allegations against Warden Tegels or HSU Administrator Maasen, so the plaintiff has not satisfied the requirement that he allege that each defendant had personal involvement in the events described in the complaint. See Rasho v. Elyea, 856 F.3d 469, 478 (7th Cir. 2017).

The plaintiff's only allegation against Nurse Morrell is that she conducted as assessment on him on May 13, 2022. Dkt. No. 1 at ¶12. Without more, this does not state a plausible claim against Morrell under the Eighth Amendment. Similarly, the plaintiff alleges that on May 24, 2023, Nurse Trevino responded to his May 18, 2023 HSU request by stating that he had an appointment for a sick call scheduled. Id. at ¶24. The plaintiff also alleges that that same day, he had a Tele-Med appointment with Dr. Tannan. Id. The plaintiff's allegation against Nurse Trevino does not state a claim for deliberate indifference. The plaintiff also has not stated a claim against Nurse McFarlane or Nurse Kling. He alleges only that Nurse McFarlane responded to his request concerning Dr. Castillo's request for Tramadol and indicated that it would take some time to get approval. Id. at ¶40. And the plaintiff alleges only that Nurse Kling responded to his September 26, 2023 HSU request by referring him to "HSR and ACP" and noting that he was scheduled to be seen by the provider and pain clinic. Id. at ¶41. The plaintiff's other allegation against Nurse Kling is that she scheduled an HSU appointment and appointments to see the nurse after the plaintiff's October 17, 2023 HSU request. Id. at ¶47. These allegations do not state a claim for deliberate indifference.

Regarding PT Krzyzanowski, the plaintiff alleges that he conducted multiple physical therapy appointments with the plaintiff and that in his notes, he commented on the plaintiff's progress, including that the plaintiff still suffered from pain. The plaintiff has not alleged that Krzyzanowski had any involvement in ignoring his pain or denying him pain medication. The plaintiff

13

has not alleged that Krzyzanowski acted with deliberate indifference to the plaintiff's medical condition.

Finally, the plaintiff has not stated an Eighth Amendment against Dr. Castillo. The plaintiff alleges that Dr. Castillo *recommended* that he be prescribed Tramadol but that other doctors chose not to follow that recommendation. The plaintiff may not proceed against Dr. Castillo.

In sum, the plaintiff may proceed on Eighth Amendment claims against defendants Galliwalla, Liu, Luebchow, LaVoie, Sukowaty and Hentz in their individual capacities. The court will dismiss all remaining defendants.

## II. Conclusion

The court **DISMISSES** defendants Elizabeth Tegels, Tiffany Morrell, Darin Krzyzanowski, N. Trevino, Nicolas Castillo, M. McFarlane, Teresa Kling and Tammy Maasen.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Dr. Galliwalla, Dr. Liu, T. Hentz, A. Luebchow, Daniel LaVoie and Laura Sukowaty. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 (sixty) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated individual. Entitled "Answers

to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 20th day of July, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**